FILED

November 25, 2015

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 8:30 AM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MURFREESBORO

| | | |
|---|---|---|
| Curtis Hickey | ) | Docket No.: 2015-05-0136 |
|      Employee, | ) | |
| v. | ) | State File No.: 21266-2015 |
| | ) | |
| Hermitage Hall | ) | |
|      Employer, | ) | |
| And | ) | Judge Dale Tipps |
| | ) | |
| New Hampshire Ins. Co. | ) | |
|      Insurance Carrier. | ) | |

---

## EXPEDITED HEARING ORDER GRANTING MEDICAL BENEFITS

---

This matter came before the undersigned workers' compensation judge on the Request for Expedited Hearing filed by the employee, Curtis Hickey, pursuant to Tennessee Code Annotated section 50-6-239 (2014). The present focus of this case is the compensability of Mr. Hickey's bilateral knee injury claim and his entitlement to medical treatment and/or temporary disability benefits. The central legal issue is whether Mr. Hickey is likely to establish he suffered an injury arising primarily out of and in the course and scope of his employment. For the reasons set forth below, the Court finds Mr. Hickey is entitled to a medical causation examination and, if causation is established, medical treatment.

## History of Claim

Mr. Hickey is a fifty-year-old resident of Rutherford County, Tennessee. He testified he worked for Hermitage Hall as a teacher at the time of his injury. He described Hermitage Hall as residential treatment center for children with emotional or behavioral issues. On March 12, 2015, Mr. Hickey was taking some documents from his classroom unit to the main office. While walking on a sidewalk on the facility grounds, he stepped off the side of the sidewalk, which was slightly elevated. The difference in elevation caused his ankle to twist, and he fell forward onto his hands and knees.

Mr. Hickey first went to see the onsite nurse and then met with the Director of

1

Schools, who helped him call the carrier and report the injury. After he went home that evening, he found that his knees were swollen. He requested medical treatment the next day, and Hermitage Hall instructed him to go to Concentra.

Records from Concentra Medical Centers show Mr. Hickey saw Dr. Sushri Mishra on March 13, 2015. He reported bilateral knee pain from a fall while walking between classes at work. Mr. Hickey said he had immediate pain in both knees, followed by increased pain, swelling, and stiffness the next morning. Dr. Mishra diagnosed knee contusion, knee pain, and sprain/strain of the knee. She assigned restrictions of no squatting, kneeling, or climbing, and no prolonged standing or walking. (Ex. 1.)

Mr. Hickey returned to Concentra on March 19, 2015, and saw Dr. Jamira Duffy, who prescribed physical therapy. He participated in physical therapy and medical treatment at Concentra until April 10, 2015. On that date, he saw P.A. Terri Wheeler, who discontinued therapy and ordered MRIs of both knees. *Id.*

Mr. Hickey testified he never had the recommended MRIs. He received no authorized medical treatment after April 10, 2015, because Hermitage Hall denied his claim. He continues to suffer from knee pain and swelling.

Mr. Hickey filed a Petition for Benefit Determination seeking medical and temporary disability benefits. The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice. Hermitage Hall filed a Request for Expedited Hearing, and this Court heard the matter on November 19, 2015.

At the Expedited Hearing, Mr. Hickey asserted he is entitled to medical treatment because his injury occurred while he was in the course of his work duties. He acknowledged a history of medical treatment for his knees, but claimed his fall resulted in swelling and additional pain.

Hermitage Hall countered that Mr. Hickey's claim is not compensable because he suffered an idiopathic injury. It also argued he did not present sufficient evidence proving that his alleged fall is the primary cause of his current condition. Even if the claim were compensable, Hermitage Hall argued Mr. Hickey would not be entitled to any temporary partial disability benefits because: 1) he was terminated for misconduct and violation of company rules, and 2) he worked at other jobs after his termination and presented no evidence of a loss of income.

### Findings of Fact and Conclusions of Law

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with

basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). The employee in a workers' compensation claim has the burden of proof on all essential elements of a claim. *Tindall v. Waring Park Ass'n,* 725 S.W.2d 935, 937 (Tenn. 1987);[1] *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). At an expedited hearing, an employee need not prove every element of his or her claim by a preponderance of the evidence, but must come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits consistent with Tennessee Code Annotated section 50-6-239(d)(1) (2014). *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). This lesser evidentiary standard "does not relieve an employee of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an expedited hearing, but allows some relief to be granted if that evidence does not rise to the level of a 'preponderance of the evidence.'" *Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015).

To be compensable under the workers' compensation statutes, an injury must arise primarily out of and occur in the course and scope of the employment. Tenn. Code Ann. § 50-6-102(13) (2014). Injury is defined as "an injury by accident . . . arising primarily out of and in the course and scope of employment, that causes death, disablement or the need for medical treatment of the employee." *Id.* For an injury to be accidental, it must be "caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence." Tenn. Code Ann. § 50-6-102(13)(A) (2014).

Hermitage Hall contends Mr. Hickey's injury did not arise primarily out of and in the course and scope of the employment because it is idiopathic, or not the result of an employment hazard. An injury arises out of employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury. *Fritts v. Safety Nat'l Cas. Corp.*, 163 S.W.3d 673, 678 (Tenn. 2005). "The mere presence at the place of injury because of employment will not result in the injury being considered as arising out of the employment because the injury must result from a danger or hazard peculiar to the work or be caused by a risk inherent in the nature of the work." *Blankenship v. Am. Ordnance Sys.*, *LLC*, 164 S.W.3d 350, 354 (Tenn. 2005). An injury that occurs while an employee is walking is not compensable "unless

---

[1] The Tennessee Workers' Compensation Appeals Board allows reliance on precedent from the Tennessee Supreme Court "unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of pre-July 1, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation Law, and/or that it relied on an analysis that has since been addressed by the general assembly through statutory amendments." *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *13 n.4 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

there is an employment hazard, such as a puddle of water or a step, in addition to the injured employee's ambulation." *Wilhelm v. Krogers*, 235 S.W.3d 122, 128 (Tenn. 2007). There must be a hazard such as "a liquid, hole, obstacle, or a vehicle" when an employee is simply walking on a level, obstacle-free surface. *Id.* at 129.

Hermitage Hall claims that no workplace hazard caused Mr. Hickey's accident. In its Brief, it describes the incident as follows: "Mr. Hickey was walking along a level concrete sidewalk, when he simply fell onto his knees without explanation." The evidence submitted to date does not support this characterization.

Mr. Hickey testified that the sidewalk was not level with the surrounding ground, but was slightly elevated. He was walking on the sidewalk when his foot slipped off the side of the walk, turning his ankle and causing him to fall. While the photographs submitted by Hermitage Hall do not show the exact spot of Mr. Hickey's fall in detail, they support his claim that the sidewalk is slightly higher than the adjacent lawn. Mr. Hickey was walking in this area because his job required it, and the area included a condition (elevated surfaces) that resulted in his fall. The Court therefore finds that this constitutes a specific hazard of Mr. Hickey's employment beyond mere ambulation, and he is likely to prevail on the issue of whether he suffered an accident arising primarily out of and in the course of his employment.

Hermitage Hall correctly asserts that Mr. Hickey has not carried his burden of establishing medical causation, as the authorized providers failed to provide a causation opinion. The lack of a causation opinion is not immediately fatal to Mr. Hickey's request for temporary medical benefits. Enforcing such a high burden early in his claim would yield the unreasonable result of prohibiting Mr. Hickey from receiving medical care for his knee conditions without first securing an expert opinion on medical causation. *See McCord,* 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9-10.

Tennessee law requires an employer to provide "free of charge to the employee such medical and surgical treatment . . . made reasonably necessary by accident as defined in this chapter[.]" Tenn. Code Ann. § 50-6-204(a)(1)(A) (2014). Mr. Hickey received treatment for knee injuries. At this point, however, it is unclear from a medical standpoint whether his work accident caused the injuries. Mr. Hickey, therefore, requires a causation opinion to determine whether his injury is work-related. Under the circumstances, the Court finds that Hermitage Hall must provide Mr. Hickey an additional medical evaluation for an opinion on medical causation.

Hermitage Hall submitted no evidence that that it ever provided Mr. Hickey with a panel of physicians. Mr. Hickey testified that Hermitage Hall or its workers' compensation carrier directed him to go to Concentra. This does not meet the requirements of Tennessee Code Annotated section 50-6-204(a)(3)(A)(i) (2014), which provides:

The injured employee shall accept the medical benefits afforded under this section; provided that in any case when the employee has suffered an injury and expressed a need for medical care, the employer shall designate a group of three (3) or more independent reputable physicians, surgeons, chiropractors or specialty practice groups if available in the injured employee's community or, if not so available, in accordance with subdivision (a)(3)(B), from which the injured employee shall select one (1) to be the treating physician.

The causation opinion, therefore, will come from a physician selected by Mr. Hickey from a panel of physicians provided by Hermitage Hall. If the selected physician determines Mr. Hickey's workplace fall was the primary cause of his condition or the primary cause of an aggravation of a pre-existing condition, Hermitage Hall shall provide continuing, reasonable and necessary care with that physician.[2]

As noted above, Mr. Hickey has not proven medical causation of his injury. As a result, he has not shown that his medical restrictions were the result of his workplace fall. Further, he presented no evidence regarding the difference between his average weekly wage at the time of his injury and the wage he was able to earn in his partially disabled condition, as required by Tennessee Code Annotated section 50-6-207(2)(A) (2014). Therefore, the Court finds he is unlikely to prevail on his claim for temporary disability benefits at this time.[3]

**IT IS, THEREFORE, ORDERED** as follows:

1. Hermitage Hall shall schedule and pay for a medical evaluation by a doctor selected by Mr. Hickey from a panel of physicians for the purpose of determining the medical causation of Mr. Hickey's bilateral knee condition. In the event medical causation is established, Hermitage Hall shall provide continuing, reasonable and necessary care with the selected physician as required by Tennessee Code Annotated section 50-6-204 (2014). Medical bills shall be furnished to Hermitage Hall or its workers' compensation carrier by Mr. Hickey or medical providers.

---

[2] The Court is cognizant of Hermitage Hall's claim that a lack of information about Mr. Hickey's prior medical history will complicate any attempt to determine medical causation. Specifically, Hermitage Hall contends that Mr. Hickey has not provided any information about his pre-existing knee problems and has refused to execute a medical release allowing Hermitage Hall to obtain copies of his Veterans Administration medical records. However, as the Court noted in its Order of September 29, 2015, Hermitage Hall did not file any motions to compel discovery or request any subpoenas. The Court offered Hermitage Hall the opportunity to do so before rescheduling the expedited hearing, but Hermitage Hall declined, preferring to proceed with the hearing before pursuing discovery.

[3] Because Mr. Hickey has failed to establish entitlement to temporary disability benefits, it is not necessary to address the issue of whether his termination precludes an award of those benefits.

5

2. Mr. Hickey's request for temporary disability benefits is denied at this time.

3. This matter is set for an Initial (Scheduling) Hearing on January 28, 2016, at 3:15 p.m.

4. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2014). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

5. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 25th day of November, 2015.**

_____

**Judge Dale Tipps**
**Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

An Initial (Scheduling) Hearing has been set with **Judge Dale Tipps, Court of Workers' Compensation Claims. You must call 615-741-2112 or toll free at 855-874-0473 to participate.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of

Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a

statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

**APPENDIX**

Exhibits:
1. Medical Records from Concentra Medical Centers
2. Affidavit of Veronica Potter
3. Affidavit of Orlando Mejia
4. Video recording of April 7, 2015
5. Photographs of sidewalk
6. Separation Notice dated April 20, 2015
7. Corrective Action Report of April 17, 2015 (for identification only)
8. Hermitage Hall's Physical Restraint Policy
9. Personnel Records
10. Photograph of sidewalk marked by Mr. Hickey
11. Photograph of sidewalk marked by Mr. Hickey
12. Training Attestation
13. Verbal De-escalation Pre-test


Technical record:[4]
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing

---

[4] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Granting Medical Benefits was sent to the following recipients by the following methods of service on this the 25th day of November, 2015.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Curtis Hickey | | | X | hickeyc01@gmail.com |
| Gregory Fuller | | | X | ghfuller@mijs.com |

_____
**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**